UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FIDELITY INSURANCE COMPANY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:03CV1521 HEA |
| EXPRESS SCRIPTS, INC., et al., | ) ) ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Partial Summary Judgment on Plaintiffs' DEA Claim, (Doc. No. 316). Plaintiffs oppose the Motion, and the Court has heard arguments on the issues involved. For the reasons set forth below, the Motion is granted.

**Issue Presented**

At issue herein is whether Defendants, (collectively, ESI) are entitled to judgement as a matter of law with respect to Plaintiffs' (collectively, Fidelity) allegations in Paragraph 125(c) of their Third Amended Complaint that ESI committed accounting and administrative errors by "failing to verify that prescribing physicians held a valid DEA license number." Fidelity contends that pursuant to the parties' contract, ESI was required to verify prescribing physicians'

DEA license number prior to authorizing payment for filled prescriptions from participating pharmacies.

ESI argues that nothing in the contract between Fidelity and ESI requires ESI to verify DEA numbers *vis a vis* Fidelity. Rather, the requirement, if any, of verifying the DEA number is an issue between ESI and its participating pharmacies, and has no bearing on its obligations to Fidelity.

**Discussion**

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set

forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell*, 459 F.3d at 921. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003).

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and give effect to that intention." *J.E. Hathman v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo.1973). If the contract is unambiguous, then the intent of the parties is to be gathered from the contract alone, and "any extrinsic or parole evidence as to the intent and meaning of the contract must be excluded from the court's review." *Vidacak v. Okla. Farmers Union Mut. Ins. Co.*, 274 S.W.3d 487, 490 (Mo.Ct.App.2008). Where a contract is ambiguous and unclear, however, "a court may resort to extrinsic evidence to resolve an ambiguity." *Burrus v. HBE Corp.*, 211 S.W.3d 613, 616 (Mo.Ct.App.2006). "A contract is ambiguous when it is reasonably susceptible to different constructions." *Id*. (internal quotation marks omitted). Whether a contract is ambiguous is a question of law. *Edgewater Health Care, Inc. v. Health*

*Sys. Mgmt., Inc.*, 752 S.W.2d 860, 865 (Mo.Ct.App.1988). If a contract is ambiguous, "then a question of fact arises as to the intent of the parties, and thus it is error to grant summary judgment." *Essex Dev., Inc. v. Cotton Custom Homes, L.L.C.*, 195 S.W.3d 532, 535 (Mo.Ct.App.2006). See *Lafarge North America, Inc. v. Discovery Group L.L.C.* 574 F.3d 973, 979 (8th Cir. 2009).

Accordingly, pursuant to Missouri law, the Court must enforce a contract "as written and according to the plain meaning of the words in the contract when the contract is clear and unambiguous." *Contract Freighters, Inc. v. J.B. Hunt Transp., Inc.*, 245 F.3d 660, 663 (8th Cir.2001) (quoting *Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 111 F.3d 588, 590 (8th Cir.1997)).

> When faced with conflicting or ambiguous specific and general provisions in a contract, a court should enforce the more specific of the terms. *Five Star Quality Care-MO, L.L.C. v. Lawson*, 283 S.W.3d 811, 815 (Mo.Ct.App.2009). The terms of a contract should be read as a whole to determine the intent of the parties, *TAP Pharm. Prods., Inc. v. St. Bd. of Pharmacy*, 238 S.W.3d 140, 143 (Mo.2007), and "[t]he test for ambiguity is whether the disputed language is reasonably susceptible of more than one meaning when the words are given their plain meaning as understood by an average person." *Rabius v. Brandon*, 257 S.W.3d 641, 645 (Mo.Ct.App.2008) (quoting *Lacey v. St. Bd. of Registration for the Healing Arts*, 131 S.W.3d 831, 839 (Mo.Ct.App.2004)).

*Dubinsky v. Mermart, LLC*, 595 F.3d 812, 816 (8th Cir. 2010).

Included within the 2000 Fidelity-ESI Contract at issue are the following

salient provisions which detail certain of ESI's obligations to Fidelity.

(b) <u>Participating Pharmacies</u>.  Upon presentation of an ID Card, Members may obtain prescriptions for Covered Drugs through the network of participating Pharmacies identified on <u>Exhibit A</u>.  ESI will provide Sponsor [Fidelity] with a list of Participating Pharmacies in such network(s) prior to the effective date of the Plan and will make available an electronic updated list from time to time.  Any additions or deletions to the network shall be in ESI's sole discretion; provided that ESI shall provide written notice to Sponsor of such deletions or additions that materially affect the access of Members to Participating Pharmacies.  Each Participating Pharmacy is required to verify the Member's eligibility through ESI's on-line claims processing system.  Participating pharmacies [sic] will dispense prescriptions to Members in a quantity not to exceed a 30-day supply unless otherwise specified in the BPD.  ESI shall direct Participating Pharmacies to charge and collect the applicable Member Contribution from Members for each Covered Drug dispensed.  A Member's copayment charged for a Covered Drug shall be the lesser of the applicable copayment set forth on the BPD, or the U&C.

(c) <u>Requirements for Participation</u>.  ESI shall require each Participating Pharmacy to meet ESI's participation requirements, including but not limited to, licensure, insurance and provider agreement requirements.  ESI does not direct or exercise any control over the professional judgment exercised by any pharmacist in dispensing prescriptions or otherwise providing pharmaceutical related services at a Participating Pharmacy.  Participating Pharmacies are independent contractors of ESI, and ESI shall have no liability to Sponsor, any Member or any other person or entity for any act or omission of any Participating Pharmacy or its agents or employees.

(d) <u>Audits of Participation Pharmacies</u>.  ESI shall maintain criteria, which it may amend from time to time, to establish when and how a Participating Pharmacy shall be audited to determine compliance with its agreement with ESI.  The audit may be conducted

> by ESI's internal auditors or its outside auditors, and at the pharmacy or at ESI by a review of electronically transmitted claims. To compensate ESI for the cost of conducting such audits, ESI shall retain an audit fee from any recovered overpayments attributable to the Plan detected in the audit in the amount set forth in <u>Exhibit A</u>. Any balance of recovered overpayments will be paid to Sponsor. ESI shall not be required to institute litigation to recover overpayments. ESI's obligations to attempt recovery through offsets of amounts due or by demand shall be ESI's sole obligation and liability with respect to remedying such overpayments.

Fidelity argues that the Contract is unambiguous in its requirement that ESI shall require each Participating Pharmacy meet the participation requirements. From this, Fidelity urges the Court to conclude that by reason of a Participating Pharmacy's failure to verify each DEA number of a proscribing physician,[1] ESI is liable to Fidelity for all amounts paid on the claims which were not DEA number verified. From this, Fidelity attempts to reason away the remaining provisions of subsection (c). Fidelity's strained interpretation of the remainder of subsection (c), however, is unavailing, particularly as it conveniently ignores subsection (d) in its entirety. As clearly and unambiguously stated, ESI "does not direct or exercise any control over the professional judgment exercised by any pharmacist *in dispensing prescriptions or otherwise providing pharmaceutical related services at a Participating Pharmacy*." (Emphasis added). Specifically, the parties agreed

---

[1] For the limited purposes of this Opinion, the Court assumes Participating Pharmacies did not verify the DEA numbers of the prescribing physicians.

that ESI *shall have no* liability to Fidelity, among others, for *any* act or omission of any Participating Pharmacy or its agents or employees. Rather, the Agreement, in subsection (d) specifically sets out the manner and method by which ESI will attempt to ensure compliance with the requirement that the Participating Pharmacies adhere to their obligations to ESI in the separate agreements between ESI and the Participating Pharmacies. Moreover, with respect to overpayments, the Contract provides that Fidelity may be entitled to some moneys recovered for overpayment.

Fidelity's attempt to apply the disclaimer of liability solely to "otherwise providing pharmaceutical related services" as opposed to "dispensing prescriptions or otherwise providing pharmaceutical related services" would render the former clause meaningless. Reading the provision as a whole, the clear intent of the parties is apparent. ESI and Fidelity agreed that because the Participating Pharmacies are independent contractors, over which ESI has no control, ESI would not be liable to Fidelity for any act and/or omission of the Participating Pharmacies. Could there be anything less ambiguous in determining the parties' intent? The unabashed answer to this obviously rhetorical question is a resounding ... No!

## Conclusion

The 2000 Fidelity-ESI Contract with respect to Fidelity's DEA claim is unambiguous in its provision that ESI shall not be liable to Fidelity for any acts and/or omissions of Participating Pharmacies. Therefore, ESI is entitled to judgment as a matter of law with respect to Fidelity's claim that ESI breached the Contract by issuing payments on claims which were not DEA number verified.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment on Plaintiffs' DEA Claim, (Doc. No. 316), is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall, within 5 days from the date of this Opinion, submit to the Court a status report as to the effect of this ruling on the pending motions in limine.

**IT IS FURTHER ORDERED** that judgment on this claim shall be entered in favor of Defendants and against Plaintiffs upon the resolution of the remaining claims.

Dated this 7th day of July, 2011.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE